Broadacres, Inc. filed suit against A. Gerodetti and A. Gerodetti, Jr., doing business as Gerodetti Construction Company and Select Insurance Company, surety for the Gerodettis, seeking specific performance of a contract to construct two buildings charging defective and incomplete performance by the defendants. On motion of the defendants the cause was transferred to the Circuit Court of Forrest County whereupon plaintiffs filed their declaration for actual damages in the amount of $337,206.45 and punitive damages in the amount of $400,000. Plaintiffs charged that defendants failed to follow plans and specifications prepared by its architect. The jury returned a verdict for $112,110 for actual damages but did not find defendants were liable for punitive damages.
The defendants admitted certain errors and omissions in the construction of the two buildings but contended: (1) they were not willful, but inadvertently made; (2) departure from the original plans and specifications was made with the full knowledge and consent of R.M. Gillespie, the principal stockholder and President of Broadacres, Inc. and that the buildings were accepted by plaintiff without requiring literal or exact compliance with the contract; and (3) certain defects arose despite compliance with plans and specifications.
Defendants also filed a cross-bill claiming that plaintiff owed them a balance of the contract price in the amount of $7,155.17, and interest on progress payments not made on the dates required by the contract.
We reverse because the jury was not properly instructed and for that reason only a brief statement of the facts will be made. Plaintiff entered into lease agreements to provide buildings for Woolco and Delchamps stores to be located in a shopping center to be built by it. The buildings were to be delivered for occupancy to Delchamps on April 1, 1971 and to Woolco on May 30, 1971. In January, 1971 plaintiff entered into a contract with the defendants for the construction of the two buildings for $758,000 with delivery dates corresponding to the requirements of the leases to Woolco *Page 267 
and Delchamps. The buildings were constructed, accepted by plaintiff and, in due course, made available to and were occupied by Woolco and Delchamps within the time required by the leases.
The principal contention of defendants on this appeal is that the court erred in giving the following instruction:
 The Court instructs the Jury that the Defendant, Gerodetti, did not fulfill his contract with Broadacres, Inc., to construct the Woolco and Delchamps buildings according to plans and specifications.
 The Court further instructs the Jury that your verdict should be in favor of the Plaintiff and that you should award to the Plaintiff such damages as you find have been proven to you by a preponderance of the evidence were proximately caused by the failure of said Defendant to construct said buildings according to plans and specifications.
Defendants objected to the instruction because the first paragraph is a peremptory instruction telling the jury that defendants did not fulfill their contract with plaintiff. We are of the opinion that this part of the instruction was properly given because defendants admitted they did not build the buildings in accordance with the plans and specifications.
Defendants objected to the second paragraph of the instruction because it furnished no guide to the jury to be used in awarding damages. We agree with this contention. We have held many times that instructions on damages must furnish the jury with a guide to be used in awarding damages. In Dickerson Const. Co., Inc. v.Process Eng., 341 So.2d 646 (Miss. 1977) plaintiffs secured an instruction on damages which authorized the jury to take into consideration: "all damages, if any, which will be caused as a result of business interruption during permanent repairs made to the building." We reversed and remanded for retrial on the issue of damages only because the instruction did not furnish a guide to the jury to be used in awarding damages. See also, CopiahDairies, Inc. v. Addkison, 247 Miss. 327, 153 So.2d 689 (1963);Ala. Great Sou. R.R. v. Broach, 238 Miss. 618, 119 So.2d 923
(1960); Sears Roebuck Co. v. Creekmore, 199 Miss. 48,23 So.2d 250 (1945), and cases cited in these three cases.
Plaintiff defends the instruction with the argument that, when all of the instructions are considered as a whole, the jury was properly instructed. This argument is based on a long line of cases to this effect. Dorroh v. Cotten, 259 So.2d 121 (Miss. 1972); Phillips v. Dow Chemical Co., 247 Miss. 293,151 So.2d 199 (1963); Scoggins v. Vicksburg Hospital, Inc., 229 Miss. 770, 91 So.2d 837 (1957).
Plaintiff argues that the following instructions for the defendants, when considered with the above quoted instruction, properly instructed the jury on the elements of damages allowable in this case.
 The Court instructs the Jury that defendants are not liable to plaintiff for any imperfections, defects or damages if the same were caused by or resulted from the architect's design of said structures.
 The Court instructs the Jury that defendants are not liable to plaintiff for roof leaks, deterioration in wood and other materials, or other water damage if you believe from a preponderance of the evidence that the water leakage resulted from the expansion and contraction of the metal expansion joints and metal flashings, and that said expansion joints and flashings were designed and specified by the architect, and that defendants, acting through their subcontractor, Malone Roofing Company, installed the expansion joints and flashings in accordance with the plans and specifications.
The instructions, considered as a whole, do not properly advise the jury of the elements of damages that may be considered in this case. Where a building is completed, substantially according to plans and specifications, the measure of damages[1] *Page 268 
may be determined by: (1) the cost rule which is the cost of repairing the defects to make the building or structure conform to the specifications where such may be done at a reasonable expense if unreasonable economic waste is not involved, or (2) the diminished value rule which is the difference in the value of the property with the defective work and what the value would have been if there had been strict compliance with the contract. The diminished value rule applies where the defects cannot be remedied without great sacrifice of work or material or would impair the building, or would involve unreasonable economic waste, or where the defects cannot be repaired at a reasonable cost, or where it is not reasonable or practicable to remedy the defects, or where the cost of remedying the defects will not fully compensate the owner for damages suffered by him. 25 C.J.S.Damages § 76, pp. 859-864 (1966); 76 A.L.R.2d 792 (1961).
In Bevis Construction Company v. Kittrell, 243 Miss. 549,139 So.2d 375 (1962) we addressed the question of the measure of damages involving substantial compliance of a building contract and held:
 The chancery court should have awarded damages to appellees for the failure of the Bevis Construction Company to carry out its agreement with them in a sum sufficient to furnish the construction of the building; or a sum sufficient to bring the building up to the specifications of the contract and agreement between the parties, together with such other damages due them as was shown to have grown directly out of the failure of the Bevis Construction Company to carry out its contract and understanding.
 The testimony on behalf of appellees shows that it will require $1,000 for necessary materials and carpentry to complete the house. It was further shown that it will cost $75 to correct the wiring and $35 to correct the hot water vent in the house. In our opinion the painting of the surface of the sills and floor joists with creosote paint, even if they had been completed, did not satisfy the specifications of the contract. The sills and floor joists should have been impregnated with creosote oil. Webster's 3rd New International Dictionary defines the verb `creosote' as follows: `To impregnate (wood) with creosote oil.' It will therefore be necessary for the Chancellor to determine on a new trial how much damages should be awarded appellees because of the failure of appellant to comply with the building contract with reference to creosoted sills and floor joists. (139 So.2d at 380).
Although Bevis did not specifically mention the diminished value rule, damages for substituting painted sills and floor joists for creosoted sills and floor joists would be measured by this rule. Bevis allowed as damages cost of completion, costs of remedying defects, and diminished value, and is therefore authority for applying the "cost" rule to some defects and the "diminished value rule" to others.
Plaintiff charges numerous defects, some of which were remedied by the plaintiff at a reasonable cost, some of which were remedied by the defendant and some of which cannot be remedied without great economic waste.
We are of the opinion that, because of the nature of defects involved, on retrial the cost rule may be applied to some and the diminished value rule to others. We do not undertake to advise the trial court specifically which rule to apply to particular defects because we do not know what the evidence will show on retrial.
This will not prevent defendants from obtaining an instruction that damages for any defect resulting from the architect's design of the buildings are not recoverable, and that plaintiff may not recover for any defects resulting from any alteration from the original plans and specifications where such change was acquiesced in, and the *Page 269 
finished work accepted by the plaintiff, if there is evidence of these factors at the new trial. Defendant will also be entitled to the instruction granted at the first trial pertaining to the duty of plaintiff to minimize its damages.
It is admitted by all the parties that plaintiff has retained $7,155.17 due defendants according to the terms of the contract. It is also admitted that defendant is entitled to a credit for interest from plaintiff at the rate of 6% per annum on $172,777.50 from March 10, 1971 to April 10, 1971 and on $486,900 from April 10, 1971 to April 22, 1971 to cover payments not made when due by the terms of the contract of the parties. Any damages found by the jury on retrial will be diminished by these sums.
The jury did not award punitive damages, plaintiff did not file a cross-appeal on this question; therefore, damages on retrial will be limited to compensatory damages only.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
[1] Our discussion of damages in this case is limited to the "cost" rule and the "diminished value rule" and does not include other damages which might accrue as a result of failure of a builder to construct a building in substantial compliance with his contract.