754 So.2d 561 (2000)
Addie Leigh FORTENBERRY, Appellant,
v.
Amos P. PARKER, Sr. and Wife, Colleen Parker, Appellees.
No. 1998-CA-01003-COA.
Court of Appeals of Mississippi.
January 11, 2000.
Certiorari Denied March 23, 2000.
J. Anthony Williams, Natchez, Attorney for Appellant.
Robert W. Byrd, McComb, Attorney for Appellees.
EN BANC.

ON MOTION FOR REHEARING
THOMAS, J., for the Court:
¶ 1. The motion for rehearing filed by Fortenberry in this matter is granted. The original opinion issued in this case is *562 withdrawn, and the following opinion is substituted as the opinion of the Court. The chancellor's decision below is affirmed.

PROCEDURAL HISTORY
¶ 2. This case is on appeal challenging the judgment of the Pike County Chancery Court enforcing a settlement agreement regarding homestead boundaries and uses of parts of the properties. Feeling aggrieved because she allegedly did not authorize her attorney to settle, the appellant perfected this appeal, raising the following two issues for our review: 1) whether an attorney has authority to settle a case when he omits a key part of his client's claim, and 2) whether the client can revoke her acceptance of the entire settlement when the attorney omits a key part of his client's claim from the settlement.
¶ 3. Upon review of the record in this case, we find that Attorney Boerner abided by Fortenberry's wishes in entering the settlement compromise with the Parkers. Therefore, we affirm the chancellor's decision.

STANDARD OF REVIEW
¶ 4. We begin by stating our well-settled standard for reviewing decisions rendered by our chancery courts: "Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court's actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard." Andrews v. Williams, 723 So.2d 1175, 1177 (Miss.Ct. App.1998) (citing Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997); Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994); Crow v. Crow, 622 So.2d 1226, 1228 (Miss. 1993); Gregg v. Montgomery, 587 So.2d 928, 931 (Miss.1991)).

FACTS
¶ 5. On August 22, 1996, the Parkers filed a complaint in the Pike County Chancery Court alleging that Fortenberry had refused to recognize the proper boundaries of the properties in dispute. Further, the complaint alleged that Fortenberry had removed a properly placed fence and replaced it with one that encroached on the Parkers' property. Fortenberry filed her answer and counter complaint, raising an alleged statutory bar to the Parkers' claim.[1] In addition, Fortenberry maintained that the property boundaries she respected had been the same for four generations and were correct. Further, Fortenberry sought, inter alia, damages of $3,500 for expenses incurred in relocating the fence along the disputed boundary, and she sought punitive damages for the Parkers allegedly causing water to collect on her property in an intentional and wilful manner as well as for her incurred attorney's fees.
¶ 6. The pivotal day in this litigation is January 19, 1998. Late on this day, a compromise settlement was reached between the parties that included: 1) the Parkers' acknowledging Fortenberry's adverse possession of a portion of the property on the north-south boundary and allowing the fence previously erected by Fortenberry to remain; 2) Fortenberry's removal of the fence due west on the east-west boundary to a point on a survey obtained by the Parkers; 3) Fortenberry's and the Parkers' agreeing to keep clear their respective ends of a drainage culvert that ran along the east-west boundary of the property; and 4) Fortenberry's withdrawal of her counterclaim for fees, expenses, and other alleged damages.
¶ 7. Fortenberry maintains that she was coerced by her attorney and pressured to settle this matter without having a flooding problem allegedly caused by the Parkers' dam redressed. However, Boerner testified that he and Mrs. Fortenberry discussed the flooding issue. According to Boerner, the fact that there was no proof that the Parkers' action in allegedly raising *563 the dam on their property had contributed to the flooding of her property led him to counsel Fortenberry that the lack of proof rendered her allegation moot. Also, one element of the settlement agreement did provide for the Parkers to keep their end of a drainage culvert clear which would have hopefully alleviated the flooding of Fortenberry's property.
¶ 8. Fortenberry contends that she terminated the attorney-client relationship with Boerner on January 19, 1998, paid her legal fees, and took her file with her. Fortenberry claims that after she left Boerner's office, Boerner contacted the counsel for the Parkers and the chancellor and informed them of the settlement, knowing that Fortenberry had terminated her relationship with him minutes before the communication of the settlement.
¶ 9. The counsel for the Parkers maintained that a settlement was entered into on January 19, and Fortenberry was bound by the terms of that settlement. At the time the agreement was made, the Parkers maintain that Attorney Boerner was still Fortenberry's counsel and that he remained her counsel until discharged by the chancellor on the morning of January 20. The chancellor agreed to grant a continuance so that Fortenberry could either proceed pro se or secure other counsel and to allow Boerner to withdraw as counsel of record for Fortenberry based on Fortenberry's objection to the terms the settlement agreement.

DISCUSSION
¶ 10. On January 20, 1998, the morning of trial, Fortenberry, accompanied by her daughter Jane, appeared in the chancery court and indicated to court staff that there was no settlement in the matter and sought a continuance. After both counsel were summoned, Attorney Boerner indicated that Fortenberry had contacted him that morning indicating her desire to rescind the settlement agreement and seek a continuance of the matter. The chancellor took great pains to explain to Fortenberry that even though a continuance would be granted, that in no way meant that she would be able to escape what her attorney had represented to the trial court as a previous settlement agreement. The chancellor quizzed Fortenberry regarding her acceptance of the agreement
The Court: And, at the end of that time did you not agree to the terms of the settlement as he just stated?
Mrs. Fortenberry: Your honor, three hours we talked with him. She [Jane] said she wanted to keep on with the lawsuit. He [Attorney Boerner] said, "There's no need to keep on with the lawsuit."
The Court: Ma`am, did you agree to the terms of the settlement?
Mrs. Fortenberry: I did, but when I got home
R-16 (emphasis added).
¶ 11. After a time of discussion between the chancellor, the attorneys, and the Fortenberrys, including an expression of concern about additional fees and expenses to be incurred by the Parkers, Fortenberry and her daughter declared that they did not intend to go to court that morning. Mrs. Fortenberry said, "I don't know how to word it or what to say. You know, you win," followed by Jane Fortenberry's assertion that they would sign whatever papers were necessary to comply with the previously announced settlement compromise.
¶ 12. On February 23, 1998, Chancellor McGehee convened another hearing in this matter. At this hearing, Fortenberry asked to proceed pro se. The chancellor allowed Fortenberry to proceed pro se and allowed Fortenberry to consult with Jane, her daughter, whenever she desired. The chancellor found that there was a factual dispute as to whether Fortenberry was represented by Attorney Boerner at the time the settlement offer was communicated and ultimately consummated for Fortenberry by Attorney Boerner. On March 24, 1998, a final hearing was held in this *564 matter to resolve the factual dispute identified by the chancellor at the February 23, 1998 proceeding. At this dispositive hearing,[2] the chancellor heard conflicting, sworn testimony from Attorney Boerner, Jane Fortenberry, and Addie Fortenberry.

THE CHANCELLOR'S DECISION
¶ 13. Mississippi law encourages compromise and settlement of litigation in order to, inter alia, expeditiously resolve conflicts between parties. McBride v. Chevron U.S.A., 673 So.2d 372, 379 (Miss. 1996). Our reading of the record in the case sub judice leads us to conclude, as did the chancellor, that Attorney Boerner abided by Fortenberry's wishes in entering the compromise settlement. While Fortenberry may not have been fully satisfied with the terms of the settlement, it is evident that she acquiesced to Attorney Boerner's entering the agreement.
¶ 14. It is well-settled that "[w]here conflicting testimony is presented, expert and otherwise, the chancellor is required to make a judgment on the credibility of the witnesses in order to resolve the questions before the court." Turnley v. Turnley, 726 So.2d 1258, 1264 (Miss.Ct.App. 1998) (citing Broadhead v. Bonita Lakes Mall, Ltd. Partnership, 702 So.2d 92, 101 (Miss.1997)). Thus, Chancellor McGehee was required to assess the credibility of the Fortenberrys and Attorney Boerner and determine whose testimony was most accurate.
¶ 15. After hearing all the testimony, the chancellor determined that Fortenberry had indeed authorized Attorney Boerner to enter into the settlement compromise in question. The chancellor found that on January 19, 1998, both Fortenberrys understood that there was a settlement. If Attorney Boerner abided by Fortenberry's wishes, then the chancellor's inquiry stops and the settlement is enforced. This is the situation in the case sub judice as outlined by Chancellor McGehee
I believe that while Mrs. Fortenberry and I find, as a matter of fact and law, that while Mrs. Fortenberry may not have been totally pleased with what was done, she did in fact authorize Mr. Attorney Boerner to settle the case and that settlement was consummated by an agreement withnot consummated but was confirmed by an agreement with counsel for the other party after give and take on the afternoon of the 19th and then was conveyed to the court. The actions of the parties which Mrs. Fortenberry would state shows that there wasn't a settlement shows to me in fact that there was one....
Having found that Fortenberry granted Attorney Boerner actual authority to settle this matter as set forth above, the chancellor need not have referred to the law of apparent authority regarding an attorney's ability to settle a lawsuit. Accordingly, as we find the chancellor properly found that Fortenberry granted Boerner actual authority to settle the pending litigation, our inquiry stops as well, and we do not reach the issues urged upon us by Fortenberry.
¶ 16. THE JUDGMENT OF PIKE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED AGAINST THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, AND PAYNE, JJ., CONCUR.
NOTES
[1] Miss.Code Ann. § 11-17-35 (1972).
[2] At this final hearing, Fortenberry was represented by an attorney, Robert O. Waller.